**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Bob Gollwitzer, | : | |
| | : | |
| Plaintiff | : | Civil Action No. |
| | : | |
| vs. | : | |
| | : | |
| Park Plus Inc., Paul Bates, and Ron Astrup, | : | |
| | : | |
| Defendants | : | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

Bob Gollwitzer ("Plaintiff"), by and through undersigned counsel, brings this employment action against Park Plus Inc. ("PPI"), Paul Bates ("Bates"), and Ron Astrup ("Astrup") (collectively "Defendants").

Defendants willfully failed to pay—and continue to willfully fail to pay—salary, overtime, and commissions owed to pay Plaintiff in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.*, as amended by the New Jersey Wage Theft Act ("NJWHL"); the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq.*, as amended by the New Jersey Wage Theft Act ("NJWPL"); and common law. Defendants also retaliated against Plaintiff in violation of the FLSA, the NJWHL, the NJWPL, and the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19, *et seq.*, by firing Plaintiff after Plaintiff requested overtime compensation. Plaintiff seeks all damages, including unpaid wages, compensatory damages, liquidated damages, and punitive damages, and all other relief under applicable federal and state law as this Court deems appropriate.

**Jurisdiction and Venue**

1.      The causes of action which form the basis of this matter arise under the FLSA, the NJWHL, the NJWPL, CEPA, and common law.

2.      The District Court has jurisdiction over Counts I and II (FLSA) pursuant to 29 U.S. Code § 216 and 28 U.S.C. §1331.

3.      The District Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the District Court under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within this District and because Defendants are doing business and/or may be served with process therein.

**The Parties**

5.      Plaintiff is an adult individual and is a citizen and resident of the United States. Plaintiff resides in Oley, Pennsylvania.

6.      At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the statutes that form the basis of this action.

7.      PPI is a Delaware for profit corporation with its headquarters located at 83 Broad Avenue, Suite 2, Fairview, New Jersey 07022.

8.      PPI is engaged in an industry affecting interstate commerce and regularly conducts business in the State of New Jersey.

9.      At all relevant times, PPI acted by and through its authorized agents, servants, and/or employees acting within the course and scope of their employment with PPI and in furtherance of PPI's business, including but not limited to Bates and Astrup.

10.     At all relevant times, PPI acted as an "employer" within the meaning of the statutes that form the basis of this action.

11.     Bates is an adult individual and is a citizen and resident of the United States. Bates resides in this District.

12.     Astrup is an adult individual and is a citizen and resident of the United States. Astrup resides in Hoboken, New Jersey.

13.     At all relevant times, Bates was PPI's Group President and Astrup was PPI's Chief Executive Officer.

14.     Bates and Astrup control PPI's operations and finances and jointly make all significant business decisions for PPI. Bates and Astrup also jointly make all final significant personnel decisions, including hiring and firing employees, setting employee compensation, setting employee policies, and determining employees' job titles.

15.     At all relevant times, Bates and Astrup acted as an "employer" within the meaning of the statutes that form the basis of this action.

## **Factual Background**

### **PPI Hires Plaintiff; PPI and Plaintiff Enter Into an Employment Agreement**

16.     PPI installs automated parking systems, parking lifts, multi-level car stackers, and custom storage and display solutions (collectively "Parking Systems") to its clients throughout the United States.

17.     On or about March 11, 2019, PPI offered a job to Plaintiff to work as General Manager for the Philadelphia, Washington, DC, and Baltimore regions.

18.     Plaintiff accepted PPI's offer of employment.

19.     On March 11, 2019, PPI and Plaintiff executed an Employment Agreement, which Bates executed on PPI's behalf. A true and correct copy of the Employment Agreement is attached as **Exhibit P-1**.

20.    According to the Employment Agreement:

(a)    Plaintiff's job title was General Manager for Park Plus, Inc. – Philadelphia. [Exhibit P-1 at ¶ 2].

(b)    Plaintiff's primary duty was "Sales and Marketing" of PPI's Parking Systems "in the regions of Philadelphia, Washington DC and Baltimore." [Exhibit P-1 at ¶ 3].

(c)    Plaintiff's base annual salary was $80,000.00. [Exhibit P-1 at ¶ 5(a)].

(d)    Plaintiff was "entitled to earn commission on net sales before tax" on sales that Plaintiff generated as follows: 25% to 30% margin – 1%; 30.1% to 37.5% margin – 2%; and 37.6% and above – 2.5%. [Exhibit P-1 at ¶ 5(b)].

(e)    PPI agreed to reimburse Plaintiff's business expenses. [Exhibit P-1 at ¶ 7].

### PPI Opens an Office in Oley, Pennsylvania

21.    On March 11, 2019, PPI entered into a commercial property lease with Ron Bortz for an office in Oley, Pennsylvania, where Plaintiff resides (the "Oley Office").

22.    At all relevant times, Plaintiff worked from PPI's Oley Office.

23.    In September 2021, PPI breached the commercial lease agreement for the Oley Office when PPI stopped paying the monthly rental amount due for the Oley Office.

24.    Because Plaintiff has a professional relationship with Mr. Bortz in his hometown where relationships and trust mean something, Plaintiff paid the Oley Office security deposit ($350.00) and the remaining monthly lease payments for the remainder of the lease term ($350.00 per month for eight (8) months), for a total of $3,150.00.

25.    Plaintiff was not personally liable for the rental amounts that PPI owed for its Oley Office.

26.    PPI has not reimbursed Plaintiff for the $3,150.00 that Plaintiff paid to Mr. Bortz for PPI's lease obligations for PPI's Oley Office.

## **Defendants Misclassify Plaintiff**

27.     Although Plaintiff's job title was "General Manager," Plaintiff's primary duty was selling PPI's Parking Systems to PPI's customers.

28.     Plaintiff performed his primary duty from PPI's Oley Office by telephone and email.

29.     Accordingly, at all relevant times, Plaintiff was a non-exempt inside sales representative.

30.     Defendants, however, misclassified Plaintiff as exempt from overtime under the FLSA and NJWHL in an attempt to avoid paying overtime compensation to Plaintiff.

31.     Between March 2019 and July 2020, Plaintiff generally worked 40 hours per week beginning at 8:00 a.m. and ending approximately 8 hours later.

32.     Plaintiff logged into Salesforce and ShareFile every morning after reporting to the Oley Office.

33.     On or about July 15, 2020, Bates offered Plaintiff a new role, which would have required Plaintiff to move to Los Angeles, California and lead PPI's team West and take over sales for that team.

34.     On or about July 20, 2020, Plaintiff declined Bates' offer to move to Los Angeles for this new role.

35.     After Plaintiff declined Bates' offer, Bates began insisting that Plaintiff work more hours and that Plaintiff arrive to work at PPI's Oley Office before 8:00 a.m.

36.     Pursuant to Bates' instruction, Plaintiff began reporting to work at PPI's Oley Office between 6:00 a.m. and 6:30 a.m. and began leaving work between 5:00 p.m. and 5:30 p.m., sometimes later.

37.    On average, between July 2020 and December 10, 2021, Plaintiff worked 55 hours per week.

38.    Defendants never paid Plaintiff overtime compensation for hours Plaintiff worked in excess of 40 hours per week.

39.    In or around November or early December 2021, Plaintiff requested to be paid overtime compensation for the hours Plaintiff worked in excess of 40 hours per week.

40.    In response to Plaintiff's overtime compensation request, Bates informed Plaintiff that PPI's sales were down due to the COVID-19 pandemic and Plaintiff would have to close a large deal before receiving additional compensation.

41.    On December 9, 2021, AJ Jenkins, PPI's National Sales Director, traveled to the Oley Office and fired Plaintiff.

42.    Defendants failed to pay Plaintiff's last week of salary for the week December 3, 2021 to December 10, 2021, which was due December 10, 2021.

43.    On or about December 14 or 15, 2021, Plaintiff informed Bates that he would be seeking injunctive relief for overtime hours that Plaintiff worked.

**<u>Defendants Fail To Pay All Wages Due to Plaintiff</u>**

44.    After PPI fired Plaintiff on December 9, 2021, PPI ceased paying Plaintiff commissions he was owed.

45.    PPI customarily paid Plaintiff's commissions in accordance with the Employment Agreement when the closing of the project occurred.

46.    Plaintiff is aware of at least seven (7) commissionable projects that closed and for which commissions are owed to Plaintiff (the "Commissionable Projects").

47.    Upon information and belief, the commissions that Plaintiff earned for the Commissionable Projects total approximately $358,823.72.

48.     The commissions for the Commissionable Projects are due to Plaintiff; however, despite demand, Defendants refuse to pay these commissions to Plaintiff.

49.     Further, Plaintiff is due future commissions on thirteen (13) projects that Plaintiff sold under the terms of the Employment Agreement (the "Future Commissionable Projects").

50.     Upon information and belief, Plaintiff's commissions for the Future Commissionable Projects total approximately $715,075.00.

**Defendants Fail to Reimburse Plaintiff for Business Travel Expenses**

51.     In May 2021, while traveling to Virginia on PPI's business, Plaintiff's vehicle suffered a transmission failure.

52.     Due to Plaintiff's vehicle suffering a transmission failure, Plaintiff was required to lease a vehicle for PPI's business.

53.     PPI did not reimburse Plaintiff for reasonable expenses, including the vehicle lease, to use while on PPI's business in accordance with the Employment Agreement. These expenses are estimated at $4,900.00.

**Count I**
**Violation of the FLSA − Overtime Compensation**
**Plaintiff v. All Defendants**

54.     Paragraphs 1 through 53 are incorporated herein by reference as if set forth at length.

55.     The FLSA requires covered employers to pay non-exempt employees no less than one-and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. *See* 29 U.S.C. § 207.

56.     PPI is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of the FLSA, § 203(b), (s)(1).

57.     Bates is an "employer" as defined by the FLSA because he exercises significant control over PPI's operations, he exercised supervisory authority over Plaintiff, and he was responsible in whole or part for the alleged violations set forth herein.

58.     Astrup is an "employer" as defined by the FLSA because he exercises significant control over PPI's operations, he exercised supervisory authority over Plaintiff, and he was responsible in whole or part for the alleged violations set forth herein.

59.     As averred above, Plaintiff was a non-exempt covered employee. *See* 29 U.S.C. § 203(e)(1).

60.     As averred above, Plaintiff worked more than forty hours (40) per week for PPI during the applicable time period.

61.     As averred above, Defendants have not properly compensated Plaintiff for his overtime hours as required by the FLSA.

62.     Defendants failed to make a good-faith effort to comply with the FLSA as it relates to Plaintiff's compensation.

63.     Defendants knew Plaintiff worked overtime without proper compensation, and they willfully failed and refused to pay Plaintiff wages at the required overtime rates. *See* 29 U.S.C. § 255.

64.     Defendants' willful failure and refusal to pay Plaintiff overtime wages for time worked violates FLSA. *See* 29 U.S.C. § 207.

65.     Further, by failing to record, report, and/or preserve records of hours worked by Plaintiff, all Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment, in violation of the FLSA. *See* 29 U.S.C. §255(a).

66.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

67.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

68.     Plaintiff seeks damages in the amount of Plaintiff's unpaid overtime compensation, liquidated damages, interest, attorney's fees and costs of action, and such other legal and equitable relief as the Court deems just and proper.

**Count II**
**Violation of the FLSA − Retaliation**
**Plaintiff v. All Defendants**

69.     Paragraphs 1 through 68 are incorporated herein by reference as if set forth at length.

70.     As averred above, all Defendants are employers within the meaning of the FLSA.

71.     Under the FLSA, it is unlawful for an employer to take an adverse action against an employee who engages in protected activity.

72.     As averred above, Plaintiff engaged in protected activity under the FLSA by requesting that Defendants compensate him for overtime worked.

73.     Upon information and belief, Defendants fired Plaintiff for engaging in a FLSA-protected activity.

74.     Upon information and belief, all Defendants made the decision to fire Plaintiff.

75.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

76.     Defendants are liable to Plaintiff for legal and equitable relief, including without limitation, actual and compensatory damages, reinstatement, liquidated damages, interest, punitive damages, and attorney's fees and costs of action.

**Count III**
**Violation of the NJWHL – Overtime Compensation**
**Plaintiff v. All Defendants**

77.     Paragraphs 1 through 76 are incorporated herein by reference as if set forth at length.

78.     The NJWHL requires covered employers to pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. *See* N.J.S.A. 12:56-6.1.

79.     As averred above, all Defendants are "employers" as defined by the NJWHL. *See* N.J.S.A. 12:56-2.1.

80.     As averred above, Plaintiff was not an employee exempt from overtime under the NJWHL. *See* N.J.S.A 12:56-7.1.

81.     As averred above, from about July 20, 2020 until December 9, 2021, Plaintiff worked more than forty hours (40) per week for PPI.

82.     As averred above, Defendants have not properly compensated Plaintiff for his overtime hours as required by the NJWHL.

83.     Defendants failed to make a good-faith effort to comply with the NJWHL as it relates to Plaintiff's overtime compensation.

84.     Defendants knew Plaintiff worked overtime without proper compensation, and they willfully failed and refused to pay Plaintiff wages at the required overtime rates.

85.     Defendants' willful failure and refusal to pay Plaintiff overtime wages for time worked violates the NJWHL.

86.     Further, by failing to record, report, and/or preserve records of hours worked by Plaintiff, Defendants failed to make, keep, and preserve records with respect to each of its

employees  sufficient to determine their wages, hours, and other conditions of employment, in violation of the NJWHL. *See* N.J.S.A. 12:56-4.1.

87.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

88.    Plaintiff seeks damages in the amount of Plaintiff's unpaid overtime compensation, liquidated damages, interest, attorney's fees and costs of action, and such other legal and equitable relief as the Court deems just and proper.

**Count IV**
**Violation of the NJWHL − Retaliation**
**<u>Plaintiff v. All Defendants</u>**

89.    Paragraphs 1 through 88 are incorporated herein by reference as if set forth at length.

90.    As averred above, all Defendants are employers within the meaning of the NJWHL. *See* N.J.S.A. 12:56-2.1.

91.    Under the NJWHL, it is unlawful for an employer to take an adverse action against an employee who engages in protected activity.

92.    As averred above, Plaintiff engaged in protected activity under the NJWHL by requesting that Defendants compensate him for overtime worked.

93.    Upon information and belief, Defendants fired Plaintiff for engaging in a NJWHL-protected activity.

94.    Upon information and belief, all Defendants made the decision to fire Plaintiff.

95.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

96.     Defendants are liable to Plaintiff for legal and equitable relief, including without limitation, actual and compensatory damages, reinstatement, liquidated damages, interest, and attorney's fees and costs of action.

**Count V**
**Violation of the NJWPL – Unpaid Wages**
**Plaintiff v. All Defendants**

97.     Paragraphs 1 through 96 are incorporated herein by reference as if set forth at length.

98.     As averred above, Defendants are employers within the meaning of the NJWPL. *See* N.J.S.A. 34:11-4.1(a).

99.     As averred above, on March 11, 2019, PPI entered into an Employment Agreement with Plaintiff, which required PPI to pay wages in the form of salary and commissions to Plaintiff.

100.   As averred above, Defendants did not pay Plaintiff's commissions for the Commissionable Projects, which are approximately $358,823.72.

101.   As averred above, Defendants did not pay Plaintiff's last week of salary, which is approximately $1,538.46.

102.   Plaintiff's salary and monthly commissions are "wages" as defined in the NJWPL. *See* N.J.S.A. 34:11-4.1(c) ("Wages" defined as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto.").

103.   Upon information and belief, all Defendants made the decision to not pay Plaintiff's wages.

104.   More than thirty (30) days have passed since the wages were due to Plaintiff.

105.   Plaintiff did not authorize Defendants to withhold wages.

106.    Defendants have knowingly and intentionally failed to pay all wages owed to Plaintiff.

107.    Defendants' failure to pay all wages owed to Plaintiff is not an inadvertent error made in good faith and Defendants do not have reasonable grounds for believing that their failure to pay wages to Plaintiff is not a violation of the NJWPL.

108.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

109.    Plaintiff seeks damages in the amount of Plaintiff's unpaid wages, liquidated damages, interest, attorney's fees and costs of action, and such other legal and equitable relief as the Court deems just and proper.

**Count VI**
**Violation of the NJWPL – Retaliation**
**Plaintiff v. All Defendants**

110.    Paragraphs 1 through 109 are incorporated herein by reference as if set forth at length.

111.    As averred above, all Defendants are employers within the meaning of the NJWPL. *See* N.J.S.A. 34:11-4.1(a).

112.    Under the NJWPL, it is unlawful for an employer to take an adverse action against an employee who engages in protected activity.

113.    As averred above, Plaintiff engaged in protected activity under the NJWPL by requesting that Defendants compensate him for overtime worked.

114.    Upon information and belief, Defendants fired Plaintiff for engaging in a NJWPL-protected activity.

115.    Upon information and belief, all Defendants made the decision to fire Plaintiff.

13

116.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

117.    Defendants are liable to Plaintiff for legal and equitable relief, including without limitation, actual and compensatory damages, reinstatement, liquidated damages, interest, and attorney's fees and costs of action.

**Count VII**
**Violation of CEPA**
**Plaintiff v. All Defendants**

118.    Paragraphs 1 through 117 are incorporated herein by reference as if set forth at length.

119.    This count arises from Defendants' violation of the CEPA, N.J.S.A. 34:19, *et seq.*, which prohibits an employer from retaliating against an employee for complaining about conduct of the employer which the employee reasonably believes is illegal.

120.    As averred above, Defendants are employers within the meaning of CEPA. *See* N.J.S.A. 34:19-2(a).

121.    At all relevant times, Plaintiff had a reasonable belief that Defendants' refusal to pay overtime compensation to Plaintiff from about July 20, 2020 until December 9, 2021 was a violation of either a law, rule, regulation, or public policy.

122.    As averred above, Plaintiff performed a whistleblowing activity by requesting that PPI compensate Plaintiff for overtime worked.

123.    As averred above, after Plaintiff requested that PPI compensate him for overtime worked, an adverse employment action was taken against Plaintiff; namely, Defendants fired Plaintiff.

124.    Upon information and belief, all Defendants made the decision to fire Plaintiff.

125.   A causal connection exists between Plaintiff's whistleblowing activity and Plaintiff's firing.

126.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

127.   Defendants are liable to Plaintiff for legal and equitable relief, including without limitation, actual and compensatory damages, reinstatement, punitive damages, interest, and attorney's fees and costs of action.

**Count VIII**
**Breach of Contract**
<u>**Plaintiff v. PPI**</u>

128.   Paragraphs 1 through 127 are incorporated herein by reference as if set forth at length.

129.   As averred above, on March 11, 2019, PPI entered into an Employment Agreement with Plaintiff, which required PPI to pay wages in the form of salary and commissions to Plaintiff and to reimburse Plaintiff's travel and business expenses.

130.   At all relevant times, Plaintiff did what the Employment Agreement required him to do, which was to perform his job selling PPI's Parking Systems.

131.   As averred above, PPI failed to perform in accordance with the Employment Agreement when PPI failed to pay Plaintiff all commissions due from the Commissionable Projects, which are approximately $358,823.72, and Plaintiff's last week of salary, which is approximately $1,538.46.

132.   As averred above, PPI also failed to perform in accordance with the Employment Agreement when it failed to reimburse Plaintiff's business and travel expenses, including lease payments that Plaintiff made for the Oley Office in the amount of $3,150.00 and business travel expenses in the amount of $4,900.00.

133.    PPI breached the Employment Agreement.

134.    Plaintiff anticipates that PPI will further breach the Employment Agreement by failing to pay Plaintiff's commissions for the Future Commissionable Projects, estimated at $715,075.00, as these commissions become due to Plaintiff.

135.    As a direct and proximate result of PPI's unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

136.    Plaintiff seeks damages in the amount of Plaintiff's unpaid salary, commissions for the Commissionable Projects and the Future Commissionable Projects, and business and travel expenses, interest, costs of action, and such other legal and equitable relief as the Court deems just and proper.

## **RELIEF**

WHEREFORE, Plaintiffs respectfully requests this Court to:

(a)    Issue a Declaratory Judgment declaring that Defendants' actions, as set forth in this Complaint, violated Plaintiff's rights under the FLSA, the NJWHL, the NJWPL, and CEPA.

(b)    Issue a Declaratory Judgment declaring that PPI owes commissions to Plaintiff for the Future Commissionable Projects.

(c)    Enjoin and restrain Defendants acting on behalf of, or in concert with, Defendants from engaging in such unlawful practices.

(d)    Enter judgment in favor of Plaintiff, and against Defendants, for all unpaid wages, unpaid overtime, compensatory damages, liquidated damages, punitive damages, pre-judgment interest, and penalties, as allowable under the FLSA, the NJWHL, the NJWPL, CEPA, and common law.

(e)    Award Plaintiffs reasonable attorney's fees together with the costs of this action.

(f)      Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Plaintiff's rights, to prevent their recurrence in the future and to protect other employees from such unlawful behavior.

## JURY DEMAND

Plaintiff hereby demands a jury to try all claims triable by jury.

Respectfully submitted,

Dated: July 29, 2022

Stephanie J. Mensing
NJ Bar No. 010752002
Mensing Law LLC
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 586-3751; (215) 359-2741 fax
stephanie@mensinglaw.com

Attorney for Plaintiff

# Exhibit P-1

## EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** dated as of March 11, 2019 (this "Agreement"), is between **PARK PLUS INC.**, a Delaware corporation ("PPI"), and Bob Gollwitzer, a resident at 6 Cricket Slope Road, Oley, PA 19547 ("Employee"). PPI and Employee agree to the following terms and conditions of employment.

1. Period of Employment.

   PPI does hereby employ Employee to render the services to PPI described in Section 2 for an unspecified period commencing on the date of this Agreement and ending on a future date yet to be determined by either party. ("Period of Employment"); provided that the Period of Employment is subject to early termination as provided in Section 4 hereof.

2. Title of Employee.

   The Employee shall be employed as General Manager for Park Plus, Inc - Philadelphia operations reporting directly to the President of PPI or his successor.

3. Responsibilities.

   During the Period of Employment, Employee shall be primarily responsible for Sales and Marketing of PPI's mechanical parking systems in the regions of Philadelphia, Washington DC and Baltimore, and shall provide such other services to PPI as the President or the Board of Directors of PPI (the "Board") shall reasonably request.

4. Full Time and Best Efforts.

   During the Period of Employment, Employee shall devote his best efforts and full-time attention to the performance of his duties and shall not be employed by, participate or engage in, or be part of, in any manner, the management or operation of any business enterprise, other than that of the Park Plus Group.

5. Compensation and Benefits.

a) Base Salary.

   In consideration of the services to be rendered under this Agreement, PPI shall pay Employee $80,000.00 (Eighty thousand Dollars) per year ("Base Salary"), payable biweekly in arrears. ( $3,076.92 x 26 ). All compensation and comparable payments to be paid to Employee under this Agreement shall be less withholdings as required by law. The Base Salary will be reviewed by and shall be subject to adjustment at the sole discretion of the Board of PPI each year during the term of this Agreement.

b) Sales Commission

In addition to the base salary the Employee will be entitled to earn a commission on net sales before tax generated by Employee as follows:

| 25% to 30% margin | - 1% |
| 30.1% to 37.5% margin | - 2% |
| 37.6% and above | - 2.5% |

6   Benefits.

Upon commencement of Employee's employment with PPI, Employee shall be entitled to receive benefits as set forth on Exhibit A hereto. PPI reserves the right, in its sole discretion, to adjust Employee's benefits provided under this Agreement.

7   Expenses.

PPI shall reimburse Employee for reasonable travel and other business expenses incurred by Employee in the performance of his duties and subject to PPI's requirements with respect to reporting and documentation of such expenses.

8   Termination of Employment.

   a.   By Employer Not For Cause.

At any time, PPI may terminate Employee without Cause, effective as of the date specified in a written or verbal notice from PPI to Employee.
PPI may dismiss Employee notwithstanding anything to the contrary contained in or arising from any statements, policies or practices of PPI relating to the employment, discipline or termination of its employees. If Employee's employment with PPI is terminated by PPI without Cause, Employee shall be entitled to receive all Base Salary through the date of termination, subject to withholding deductions and any other amounts PPI is required to withhold or deduct by applicable law and the right to elect COBRA coverage thereafter; and

   b.   By Employer For Cause.

At any time, and without prior notice (except as otherwise provided in the definition of Cause set forth below), PPI may terminate Employee for Cause and the Period of Employment shall be deemed to have ended as of the date Employee ceases to be employed by PPI.  PPI shall pay Employee all compensation then due and owing; thereafter, all of PPI's obligations under this Agreement shall cease.  PPI shall have no further obligation to pay severance of any kind whether under this Agreement or otherwise nor to make any payment in lieu of notice.  For purposes of this Agreement, "Cause" shall mean the occurrence or existence of any of the following with respect to Employee, as determined in good faith by the Board:

2

(i)     substantial and repeated failure to perform duties as reasonably directed by the acting President or Board Member, after PPI has given Employee five (5) days' prior notice of its intent to terminate the Period of Employment as a result of such failure and the Employee has not cured such breach or alleged breach within such 5-day period;

(ii)     a breach by Employee of any of his material obligations hereunder that remains uncured after the lapse of ten (10) days following the date that PPI has given Employee written notice thereof;

iii)     engaging in habitual alcoholism or drug abuse;

iv)     any act of misappropriation, embezzlement, intentional fraud or similar conduct involving PPI or any of its affiliates; or

v)     the conviction or the plea of *nolo contendere* or the equivalent in respect of a felony involving moral turpitude.

vi)     <u>By Employee.</u>

At any time, Employee may terminate his employment for any reason, with or without cause, by providing PPI 15 days advance written notice. PPI shall have the option, in its complete discretion, to make Employee's termination effective at any time prior to the end of such notice period. PPI shall pay Employee all compensation then due and owing through the fifteen-day notice period provided by Employee; thereafter, all of PPI's obligations under this Agreement shall cease. PPI shall have no further obligation to pay severance of any kind whether under this Agreement or otherwise.

vii)     <u>Termination Upon Death or Permanent Disability.</u>

Employee's employment with PPI shall also terminate upon Employee's death or permanent mental or physical disability or other incapacity, which incapacity results in Employee's absence from work for a period in excess of thirty (30) consecutive days or thirty (30) days in any 12-month period. The Period of Employment shall be deemed to have ended as of the date Employee ceases to be employed by PPI. Upon any such termination, PPI shall pay Employee (or Employee's estate or legal representative or guardian) all compensation then due and owing Employee, including, without limitation, any unpaid bonus from the prior fiscal year; thereafter, all of PPI's obligations under this Agreement shall cease. PPI shall have no further obligation to pay severance of any kind whether under this Agreement or otherwise nor to make any payment in lieu of notice.

9    <u>Termination of Compensation.</u>

3

Except as otherwise expressly provided herein or under any specific written policy or benefit plan of PPI or as expressly required under applicable law (such as COBRA), upon termination or expiration of the Period of Employment (i) all of Employee's rights to salary, bonuses, employee and other benefits and other compensation hereunder that would have accrued or become payable shall cease and (ii) no other severance compensation or retirement benefits shall be payable by PPI to Employee.

10  Termination Obligations.

(i)     Employee agrees that all property, including, without limitation, all equipment, tangible Proprietary Information (as defined below), documents, books, records, reports, notes, contracts, lists, computer disks (and other computer-generated files and data), and copies thereof, created on any medium and furnished to, obtained by, or prepared by Employee in the course of or incident to his employment, belongs to PPI and shall be returned promptly to PPI upon termination of the Period of Employment. Any and all IP owned by Employee or PPI on date of this agreement shall be subject to a license agreement between PPI and Employee if retained for use by PPI in the event of termination of employment by either party.

(ii)    Upon termination of the Period of Employment, Employee shall be deemed to have resigned from all offices and Board positions then held with PPI or any affiliate.

11  Proprietary Information Obligations.

During the term of employment under this Agreement, Employee will have access to PPI's and PPI's confidential and proprietary information, including, but not limited to, information or plans regarding PPI's and PPI's customer relationships, personnel, or sales, marketing, and financial operations and methods, trade secrets, formulas, devices, secret inventions, processes, and other compilations of information, records, and specifications (collectively "Proprietary Information"). Employee shall not disclose any of PPI's or PPI's Proprietary Information directly or indirectly, or use it in any way, either during the term of this Agreement or at any time thereafter, except as required in the course of his employment for PPI or as authorized in writing by PPI. All memoranda, notes, plans, files, records, reports, documents, computer-recorded information, printouts, software, drawings, specifications, equipment and similar items relating to the Proprietary Information, Work Product (as defined below) or the business of PPI or PPI's, whether prepared by Employee or otherwise coming into his possession or under his control, shall remain the exclusive property of PPI. Notwithstanding the foregoing, Proprietary Information shall not include (a) information which is or becomes generally public knowledge or public other than as a result of Employee's acts or omissions in violation of this Agreement and (b) information that may be required to be disclosed by applicable law.

12  Inventions and Patents.

Employee acknowledges that all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports and all similar or related information

(whether or not patentable) that relate to any of PPI's actual or anticipated business, research and development or existing or future products or services and which are conceived, developed or made by Employee while employed by PPI ("Work Product") belong to PPI. Employee will promptly disclose such Work Product to PPI and perform all actions requested by PPI (whether during or after employment) to establish and confirm such ownership (including without limitation, assignments, consents, powers of attorney and other instruments).

13 Noninterference; Noncompetition.

    (a) In further consideration of the compensation to be paid to Employee hereunder on the date hereof, Employee acknowledges that in the course of his employment with PPI he has and will continue to become familiar with PPI's trade secrets and with other Proprietary Information concerning PPI and that his services shall be of special, unique and extraordinary value to PPI. Therefore, Employee agrees that, during the Period of Employment and thereafter for thirty-six (36) months:

    (b) Employee will not directly or indirectly solicit any business involving or similar to any existing or planned products marketed by PPI from any person or organization which is, or has been, a customer of PPI;

    (c) Employee will not request or advise any customer, prospective customer, supplier, licensee, licensor, landlord or other business relation of PPI to withdraw, curtail or cancel its business dealings with PPI (including making any negative statements or communications about PPI); and

    (d) Employee will not directly or indirectly recruit, hire, solicit or attempt to solicit (other than through advertisements or general solicitations) any person who was an employee of PPI during the term of Employees employment with Employer.

    (e) In further consideration of the compensation to be paid to Employee hereunder and for the Transaction, Employee agrees that, during the Period of Employment  he will not, without the prior consent of PPI, directly or indirectly, have an interest in, be employed by, or be connected with, as an employee, consultant, officer, director, partner, stockholder or joint venturer, in any person or entity owning, managing, controlling, operating or otherwise participating or assisting in any business that is in competition with the business of PPI during the Period of Employment, in any location, and for the 36-month period following the termination of the Period of Employment, in any jurisdiction within the United States of America.

    (f) If Employee breaches, or threatens to commit a breach of, any of the provisions of this Section , PPI shall be entitled, in addition to all other available rights and remedies, to withhold any of the amounts agreed to be paid to Employee hereunder and PPI shall also be entitled to terminate his

employment status hereunder and the provision of any benefits and compensation conditioned upon such status. If, at the time of enforcement of this Section, a court shall hold that the duration or scope restrictions stated herein are unenforceable under circumstances then existing, the parties agree that the maximum duration or scope that is enforceable under such circumstances shall be substituted for the stated duration or scope and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period and scope permitted by law.

14  Arbitration.

i.  Arbitrable Claims.

(i)     To the fullest extent permitted by law, all disputes between Employee and PPI of any kind whatsoever, including, without limitation, all disputes relating in any manner to the employment or termination of Employee, and all disputes arising under this Agreement ("Arbitrable Claims") shall be resolved by arbitration. Arbitrable Claims shall include, but are not limited to, contract (express or implied) and tort claims of all kinds, as well as all claims based on any federal, state or local law, statute or regulation, excepting only claims under applicable workers' compensation law and unemployment insurance claims. By way of example and not in limitation of the foregoing, Arbitrable Claims shall include (to the fullest extent permitted by law) any claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Americans with Disabilities Act, as well as any claims asserting wrongful termination, harassment, breach of contract, breach of the covenant of good faith and fair dealing, negligent or intentional infliction of emotional distress, negligent or intentional misrepresentation, negligent or intentional interference with contract or prospective economic advantage, defamation, invasion of privacy, and claims related to disability.

ii.  Procedure.

Arbitration of Arbitrable Claims shall be in accordance with the then-current National Rules for the Resolution of Employment Disputes of the American Arbitration Association, as amended ("AAA Employment Rules"), as augmented in this Agreement. Arbitration shall be initiated as provided by the AAA Employment Rules, although the written notice to the other party initiating arbitration shall also include a statement of the claim(s) asserted and the facts upon which the claim(s) are based. Arbitration shall be final and binding upon the parties and shall be the exclusive remedy for all Arbitrable Claims. Judgment on the award may be entered in any court having jurisdiction. Either party may bring an action in court to compel arbitration under this Agreement and to enforce an arbitration award. Otherwise, neither party shall initiate or prosecute any lawsuit or administrative action in any way related to any Arbitrable Claim. All arbitration hearings under this Agreement shall be conducted in Los Angeles, California. The decision of the arbitrator shall be in writing and shall include a

statement of the essential conclusions and findings upon which the decision is based. THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS, INCLUDING WITHOUT LIMITATION ANY RIGHT TO TRIAL BY JURY AS TO THE MAKING, EXISTENCE, VALIDITY, OR ENFORCEABILITY OF THE AGREEMENT TO ARBITRATE.

iii.   Arbitrator Selection and Authority.

All disputes involving Arbitrable Claims shall be decided by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties within thirty (30) days of the effective date of the notice initiating the arbitration. If the parties cannot agree on an arbitrator, then the complaining party shall notify the AAA and request selection of an arbitrator in accordance with the AAA Employment Rules. The arbitrator shall have only such authority to award equitable relief, damages, costs and fees as a court would have for the particular claim(s) asserted. The fees of the arbitrator and AAA shall be paid by the non-prevailing party. If the allocation of responsibility for payment of the arbitrator's fees would render the obligation to arbitrate unenforceable, the parties authorize and agree to instruct the arbitrator to modify the allocation as necessary to preserve enforceability. The arbitrator shall have exclusive authority to resolve all Arbitrable Claims, including, but not limited to, arbitrability and whether all or any part of this Agreement is void or unenforceable.

iv   Fees and Expenses.

Each party shall pay its own attorney fees and costs including, without limitation, fees and costs of any experts. However, attorney fees and costs incurred by the party that prevails in any such arbitration commenced pursuant to this Section 8 or any judicial action or proceeding seeking to enforce the agreement to arbitrate disputes as set forth in this Section 8 or seeking to enforce any order or award of any arbitration commenced pursuant to this Section 8 may be assessed against the party or parties that do not prevail in such arbitration in such manner as the arbitrator or the court in such judicial action, as the case may be, may determine to be appropriate and lawful under the circumstances. If any party prevails on a statutory claim that entitles the prevailing party to a reasonable attorney fees (with or without expert fees) as part of the costs, the arbitrator shall award reasonable attorney fees (with or without expert fees) to the prevailing party in accord with such statute. Any controversy over whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of this paragraph with respect to such arbitration shall be determined by the arbitrator.

15 Modification of This Agreement.

In a contractual claim under this Agreement, the arbitrator shall have no authority to add, delete or modify any term of this Agreement.

7

16  Confidentiality.

All proceedings and all documents prepared in connection with any Arbitrable Claim shall be confidential and, unless otherwise required by law, the subject matter thereof shall not be disclosed to any person other than the parties to the proceedings, their counsel, witnesses and experts, the arbitrator, and, if involved, the court and court staff. All documents filed with the arbitrator or with a court shall be filed under seal. The parties shall stipulate to all arbitration and court orders necessary to effectuate fully the provisions of this subsection concerning confidentiality.

17  Continuing Obligations.

The rights and obligations of Employee and PPI set forth in this Section on Arbitration shall survive the termination of Employee's employment and the expiration of this Agreement.

18  No Restrictions.

Employee warrants and represents to PPI that he has not entered into any agreements or understandings which in any way would prevent or impede Employee from fulfilling his obligations to PPI under this Agreement.

19  Notices.

Any notice or other communication under this Agreement must be in writing and shall be effective upon delivery by hand, or three business days after deposit in the United States mail, postage prepaid, certified or registered, and addressed to PPI or to Employee at the corresponding address below. Employee shall be obligated to notify PPI in writing of any change in his address. Notice of change of address shall be effective only when done in accordance with this Section.

If to PPI:

83 Broad Avenue

Fairview

New Jersey 07022

Attn: Ron Astrup, President


If to Employee:

6 Cricket Slope Road,
Oley,
PA 19547

8

or to such other address or to the attention of such other person as the recipient party will have specified by prior written notice to the sending party.

20  Entire Agreement.  This Agreement is intended to be the final, complete and exclusive statement of the terms of Employee's employment by PPI.  This Agreement supersedes all other prior and contemporaneous agreements and statements, whether written or oral, express or implied, pertaining in any manner to the employment of Employee, and it may not be contradicted by evidence of any prior or contemporaneous statements or agreements.

21  Amendments; Waivers.  This Agreement may not be amended except by an instrument in writing, signed by each of the parties.  No failure to exercise and no delay in exercising any right, remedy or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy or power provided herein or by law or in equity.

22  Assignment; Successors and Assigns.  Nothing in this Agreement shall prevent the consolidation of PPI with, or its merger into, any other entity, or the sale by PPI of all or substantially all of its assets, or the assignment by PPI of any rights or obligations under this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, legal representatives, successors, and permitted assigns, and shall not benefit any person or entity other than those specifically enumerated in this Agreement.

23  Severability.  If any provision of this Agreement, or its application to any person, place, or circumstance, is held by an arbitrator or a court of competent jurisdiction to be invalid, illegal, unenforceable or void, such provision shall be enforced to the greatest extent permitted by law, and the remainder of this Agreement and such provision as applied to other persons, places and circumstances shall remain in full force and effect.  If any covenant should be deemed invalid, illegal or unenforceable because its scope is considered excessive, such covenant shall be modified so that the scope of the covenant is reduced only to the minimum extent necessary to render the modified covenant valid, legal and enforceable.

24  Counterparts.  This Agreement may be executed on separate counterparts, any one of which need not contain signatures of more than one party, but all of which taken together will constitute one and the same agreement.

25  Remedies.  In addition, and supplementary to other rights and remedies existing in its favor, Employee may apply to the court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce or prevent any violations of the provisions hereof, including Sections 5, 6 and 7 hereof.

26  Choice of Law.  This Agreement will be governed by, and construed in accordance with, the laws of the State of New Jersey.

9

**IN WITNESS WHEREOF,** the parties have executed this Agreement effective as of the date set forth above.

PARK PLUS, INC.

By: _____
Paul Bates
President


EMPLOYEE:

_____
Bob Gollwitzer

10